**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 17-24518-CV-WILLIAMS/TORRES

43 NORTH BROADWAY LLC,

       Plaintiff,

v.

ESSENTIAL MEDIA GROUP LLC,

       Defendant.

_____/

**AMENDED ORDER ON PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

This matter is before the Court on Plaintiff's Motion for Leave to File an

Amended Complaint and Add Parties, filed on March 13, 2018. [D.E. 34]. Defendant

filed a response in opposition to the Motion on March 14, 2018, and the Reply followed

on March 21. [D.E. 35, 36]. After a review of the Motion, Defendant's Response, and

upon Plaintiff's Motion for Reconsideration [D.E. 40], we hold that Plaintiff's Motion

should be **GRANTED in part** and **DENIED in part**.

## *I.     FACTUAL BACKGROUND*

Plaintiff initially filed suit in the District Court for the Central District of

California. [D.E. 1]. The Complaint names as the defendant ESSENTIAL MEDIA

GROUP, LLC ("Defendant," "Essential Media," or "EMG"), a limited liability

company organized and operating in the State of Florida. *Id.*, ¶ 2. Plaintiff 43 NORTH

BROADWAY, LLC ("Plaintiff"), a New York corporation, brought suit under the

provisions of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, claiming that Defendant unlawfully and without Plaintiff's permission used and claimed ownership of the copyrighted song "Baby, I'm Gonna Love You." *Id.* ¶¶ 1, 7. The Complaint asserts a single cause of action, seeking damages from Essential Media for direct infringement of the copyrighted work. [D.E. 1, p. 3].

Based on the parties' stipulation, the Central District of California transferred the case to this Court on December 14, 2017. [D.E. 15]. Defendant answered the Complaint on January 8, 2018. [D.E. 25]. On March 13, 2018, Plaintiff sought to amend its Complaint and add certain parties to the lawsuit, and that matter is now before this Court. [D.E. 34]. Plaintiff seeks to add Paul Klein, Rama Barwick, and Sharon Klein, individuals allegedly managing Defendant's operation at the time the infringing conduct took place. *Id.*, ¶ 4-5. According to the Motion, the individuals to be added had knowledge, profited, and internally induced EMG's direct infringement. *Id.* Plaintiff therefore also asks that a second cause of action for secondary copyright infringement against those same individuals be added to the Complaint. *Id.*

Defendant opposes the Motion, arguing that amendment would be futile because the Amended Complaint fails to plead the necessary elements of a secondary liability claim under the Copyright Act – namely, that the individual officers not only profited from the alleged infringement, but also had the right to and ability to supervise the direct infringer. *Id.*, p. 2. For the reasons stated below, we will allow Plaintiff to amend the Complaint to add the individuals to Count I, but deny the request to add a second count to the Complaint.

## II.    ANALYSIS

Unless otherwise specified, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[1] The Rule goes on to state that "[t]he court should freely give leave when justice so requires." *Id.*; *Patel v. Georgia Dept. BHDD*, 485 F. App'x 982 (11th Cir. 2012). Despite this, a court may deny leave to amend on numerous grounds, including the futility of the amendment. *Maynard v. Bd. of Regents of Div. of Univ. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003). Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1990) (citations omitted).

### A.    *Count I – Direct Infringement*

Plaintiff is correct that corporate officers can be held liable for a corporation's infringing activity. *See Southern Bell Tel. and Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985). This would be applicable to claims of direct infringement, which Plaintiff alleges took place in Count I. For this reason, the Motion to Amend the Complaint as to this Count will be **GRANTED**. *See id.*

---

[1]    Rule 15 governs the Motion to Amend because Plaintiff filed its request prior to the deadline to amend pleadings outlined by the Court's Scheduling Order. [D.E. 32]. Had it failed to do so, the more stringent Rule 16 "good cause" analysis would have controlled. *See Sosa v. Airprint System, Inc.*,133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) [on a motion to amend] without regard to Rule 16(b), we would render scheduling orders meaningless and effectively read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

### B.      *Count II – Secondary Infringement*

Plaintiff's arguments about asserting a claim for secondary infringement, however, remain meritless, and so we will deny the request to amend the Complaint to add a second count against the Defendants. There are two types of copyright infringement: direct and secondary. Direct copyright infringement requires proof that the plaintiff: (1) owns a valid copyright; and (2) the defendant copied protected elements of that work that are original. *Disney Enterprises, Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1307 (S.D. Fla. 2011) (citing *Saragama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011)). "Copying" includes infringing on any of the exclusive rights set forth in 17 U.S.C. § 106 – the right to reproduce, distribute, publicly display, perform, or create derivative works of the copyrighted materials. 17 U.S.C. § 106(1) – (6).

Secondary liability applies when a defendant is held responsible for a third party's acts of infringement, even though the defendant did not engage in direct infringement themselves. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984). There are two types of secondary infringing activity: contributory and vicarious. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Contributory copyright infringement occurs where a defendant "intentionally induc[es] or encourage[s] direct infringement." *Id*. Vicarious infringement occurs when a defendant "profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement. *Id*. at 931 n.9.

Plaintiff now seeks to amend its Complaint based on *Groskter* and its progeny. It claims that certain individuals involved in the management of Essential Media "intentionally induced, encouraged or materially contributed to [EMG's] direct infringement." [D.E. 34-1, ¶19]. But the Motion must be denied because Plaintiff's request is based on a fundamental misunderstanding of the law *viz a viz* secondary infringement.

In order to recover under such a theory, a plaintiff must show that its actions caused a *third party* to infringe on a protected work. *See Grokster*, 545 U.S. at 936-37. The Eleventh Circuit "has stated the well-settled test for a contributory infringer as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct *of another.*'" *Cable/Home Comms. Corp. v. Network Productions, Inc.*, 902 F.3d 829, 845 (11th Cir. 1990) (citing *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement *by a third party.*"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 n. 11 (9th Cir. 2007) ("[C]ontributory liability is based on the defendant's failure to stop its own actions which facilitate *third-party* infringement.") (all emphasis added).

Such a requirement finds support in *Grokster*, where the Supreme Court considered copyright claims brought against companies that "distribute[d] free software products that allow[ed] computer users to share electronic files through peer-to-peer networks." *Grokster*, 545 U.S. at 919-20. The users of those peer-to-peer

networks – but not the software companies – utilized the products to share "copyrighted music and video files without authorization." *Id*. Several movie studios and other copyright holders brought suit against the software companies, arguing that the defendants "knowingly and intentionally distributed their software to enable users to reproduce and distribute the copyrighted works in violation of the Copyright Act." *Id*. at 920-21.

The software companies, on the other hand, contended that mere creation and operation of the peer-to-peer networks could not be considered a violation of the Copyright Act. *Id*. According to those defendants, the companies lacked "actual knowledge of specific acts of infringement," and therefore could not be held liable for illicit downloading of copyrighted materials made by third party end-users of the networks. *Id*. at 927. The Ninth Circuit Court of Appeals found in favor of the software companies, holding that "distribution of a commercial product capable of substantial non-infringing uses could not give rise to contributory liability for infringement unless the distributor had actual knowledge of specific instances of infringement and failed to act on that knowledge." *Id*.

On review, the Supreme Court reversed, holding that "[o]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by *third parties*." *Id*. at 936-37 (emphasis added). The Court found that the record contained clear evidence of the "distributors' words and deeds [that went] beyond mere distribution," which in its view showed "a purpose to

6

cause and profit from third-party acts of copyright infringement." *Id.* at 941-42 ("At bottom, however labeled, the question in this case is whether Grokster and StreamCast are liable for the direct infringing acts of others.") (Ginsburg, J., concurring). Thus, in order for us to allow amendment of the Complaint, the new allegations would need to demonstrate that not only did EMG commit direct infringement – a claim successfully alleged in Count I of the Complaint – but that the to-be-named managers of EMG "induce[d], cause[d] or materially contribute[d] to the infringing conduct of another." *Cable/Home Comms. Corp.*, 902 F.3d at 845. It would be impossible to make such a finding here.

Indeed, the very individuals to be added to the Complaint are, by Plaintiff's own admission, "managing members of EMG," the Defendant named in the initial Complaint. [D.E. 34]. As any actions undertaken by the corporation's managers would be directly imputed to EMG, and a corporation only acts through its officers, employees, or agents, the proposed Amended Complaint cannot state a cause of action for secondary liability because the requisite "third party direct infringer" is not – and cannot ever be – pled. *See In re Spear & Jackson Securities Litigation*, 399 F. Supp. 2d 1350, 1361 (S.D. Fla. 2005) ("Courts have uniformly held that acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation."); *United Feature Syndicate, Inc. v. Sunrise Mold Co., Inc.*, 569 F. Supp. 1475, 1480-81 (S.D. Fla. 1983) ("Knowledge of officers, directors, employees and agents of the corporation is imputed to the corporation

7

itself.").[2] The managers cannot be said to have induced EMG (the proposed third party infringer) because, as managers of that company, the newly-named individuals *are* EMG. Thus, under this set of facts, any claim for secondary liability is legally impossible; the parties are one and the same, and the Amended Complaint would be subject to dismissal even if we granted the relief requested in Plaintiff's Motion. *See Weaver*, 169 F.3d at 1320.

Plaintiff's contention that we "misapplied and/or overlooked Eleventh Circuit" law on the issue is incorrect. To support such an argument, Plaintiff merely cites to two district court cases: *Disney Enterprises, Inc. v. Hotfile Corp.*, 2013 U.S. Dis. LEXIS 172339, *1 (S.D. Fla. Sept. 20, 2013) and *Quartet Music v. Kissimmee Broadcasting, Inc.*, 795 F. Supp. 1100, 1104 (M.D. Fla. 1992). Not only are these cases not binding upon this Court, but a cursory examination of the factual circumstances involved in each show that they are wholly inapplicable to the claim Plaintiff seeks to assert here.

In *Disney Enterprises*, Plaintiff claims that the district court "found that a high-ranking shareholder that effectively managed a corporation was liable for the corporation's infringement." [D.E. 40, p. 6]. That statement, while by itself true, omits a key fact that derails Plaintiff's argument: the individual officer could be found liable

---

[2]     *See also Stop & Shop Companies, Inc. v. Federal Ins. Co.*, 136 F.3d 71, 74 (1st Cir. 1998) ("We repeat at the threshold the fundamental premise that, while a corporation does have a noncorporeal and independent existence, it conducts its affairs *only through its officers and employees*.") (emphasis added); *Coach, Inc. v. Sapatis*, 27 F. Supp. 3d 239, 245 (D.N.H. 2014) ("A corporation can only act through its agents.").

for secondary infringement *only because he actively induced third parties to commit direct infringement. See Disney Enterprises*, 2013 U.S. Dist. LEXIS 172339, *6 (finding that "Defendants are vicariously liable *for the actions of Hotfile's users*" and that "[the corporate officer] is individually liable for the actions of his company, such that he will have to share in whatever judgment Hotfile is deemed to owe.") (emphasis added). Indeed, the decision leaves no doubt that the secondary liability claim required infringing activity of third party users before any such liability could attach:

- "While an individual's act of uploading a file is ostensibly innocuous – and indeed other networks provide similar sorts of services – several of Hotfile's attributes *facilitate users' infringement of copyright.*" *Id.*, *8.

- "Indeed, as discussed below, one of Hotfile's main defenses in this action is that it is unaware of the nature of the content available and *has no affirmative duty to monitor user activities.*" *Id.*, *9.

- "[I]n the late 1990s and early 2000s, copyright owners brought numerous successful challenges to peer-to-peer file networks, *which coordinated the transmission of media stores on users' computers directly to other users,* imposing liability on the network operators for *the conduct of their users.*" *Id.*, *12, n.4.

- "Titov [the corporate officer at issue] has personally had a hand in every aspect of the conduct underpinning the Studios' theories of liability in this case. For example, at the outset, Titov wrote the programming code that runs the Hotfile interface *and enables direct infringers* to upload and download protected works." *Id.*, *141-42.

(all emphasis added). These excerpts are just a sampling of the voluminous references the Court makes concerning the infringement of other users that necessitated a finding of secondary liability against Hotfile, and – as a "critical actor in the underlying operations – the corporate officer that directed the company's activities. *Id.*, *144.

As the *Disney* decision makes abundantly clear, then, a corporate officer may be held liable for the direct infringement of the corporation he or she oversees, and may even be held personally liability for secondary infringement conducted by that same corporation. But – and this is the point Plaintiff cannot grasp – in order for such secondary infringement to attach, the officer (or corporation) must first induce *third parties*, such as users of Hotfile or Grokster's software, to commit activity constituting direct infringement. *See Arista Records LLC v. USENET.com*, 663 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("For all three theories of secondary copyright infringement [to be valid], *there must be the direct infringement of a third party*.") (emphasis added). The proposed Amended Complaint makes this impossible, as the only other party induced would be the very same corporation the individuals added to Count I control. EMG cannot be considered the requisite third party, and so any attempt to attach secondary liability to a corporate officer of the same corporation alleged to be committing the direct infringement would be futile. *See id.* (corporate officer could be found individually liable on a theory of secondary liability because he controlled operations of corporate defendant that encouraged third parties to illegally download music); *cf. Southern Bell*, 756 F.2d at 811 (corporation held liable for infringing activity of employee, but under a theory of direct – not secondary – infringement); *Quartet Music*, 795 F. Supp. at 1104 (individual officer, who acted as president of corporate operator of radio station that allegedly broadcast songs without license, could be held individually liable for acts of *direct infringement* by corporation on licensor's catalog).

As such, we **DENY** the request to add a secondary infringement claim to the Complaint because amendment is futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). The individuals Plaintiff seeks to add to the Complaint are all managers of the corporation named in the initial pleading; those individuals could certainly be found secondarily liable if they induced another party to conduct direct infringement, but EMG cannot be that third party.

### III.    CONCLUSION

For the above-stated reasons, it is hereby **ORDERED** that Plaintiff's Motion to Amend the Complaint is **GRANTED** as to Count I to add the individually-named corporate officers, but **DENIED** with regard to the request to add a second count to the Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida this 11th day of June, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge